IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 21, 2007

# ERIC MAGNESS ET AL. v. TERRELL W. COUSER ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 30722     Russ Heldman, Chancellor**

---

**No. M2006-00872-COA-R3-CV - Filed January 24, 2008**

---

This case involves a property dispute between neighbors. Property owner and her son who resides on her property brought an action to quiet title and for ejectment against a neighboring property owner. The trial court imposed sanctions against the defendant under Rule 37 of the Tennessee Rules of Civil Procedure for failing to comply with its order compelling discovery responses. The court subsequently granted the plaintiffs' motion for partial summary judgment and, after a hearing on damages, issued a permanent injunction against the defendant and her son and a judgment for damages and costs against the defendants. The defendants have appealed. We affirm the trial court's judgment in part, reverse in part and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part,
Reversed in Part and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Brian O. Bowham, Nashville, Tennessee, for the appellants, Edith G. Couser and Thomas Couser.

J. Todd Moore, Brentwood, Tennessee; T. Holland McKinnie, Franklin, Tennessee, for the appellees, Eric Magness and Kathleen S. Magness.

## OPINION

Kathleen Magness is the owner of a tract of land approximately 3.5 acres in size located on Talley Hollow Road in Fairview, Williamson County, Tennessee. Her son, Eric Magness, lives on the Magness property. Edith G. Couser is the owner of an adjacent tract of land approximately 40 acres in size that abuts Ms. Magness's property on three sides. Ms. Couser's son, Thomas Couser, lives on the Couser property.

In June 2004, Kathleen and Eric Magness filed suit to quiet title, for ejectment, and for injunctive relief against Edith and her husband Terrell Couser and Williamson County.[1] The complaint included the following allegations:

> 7. The Cousers are attempting to possess a portion of Plaintiff's property and to appropriate it to their use and are trespassing upon said lands and causing their personal property to trespass upon the same. The Cousers have erected a stone wall or a rock pile and placed posts on the Plaintiff's property and have moved dirt onto the public right-of-way of Talley Hollow Road, impeding the Plaintiffs' use of their property and access to their property.
>
> 8. The Cousers have also interfered with the placement of land surveyor's markers on the property lines between the properties, having buried at least one marker.

The plaintiffs requested that title to the disputed land be decreed and quieted, that the Cousers be ordered to return the land to its character prior to the alleged trespass, and that the plaintiffs be awarded damages and a permanent injunction requiring the Cousers to "cease, terminate, and remediate" the described trespass upon the property and refrain from future trespassing. Williamson County filed an answer and was eventually granted summary judgment based upon the court's finding that Talley Hollow Road was not and never had been a county road.

After the plaintiffs filed a motion for default judgment in August 2004, Ms. Couser filed an answer and counterclaim. In her answer, Ms. Couser alleged that Talley Hollow Road was owned by her or by the county and that she had moved stones to address erosion issues caused by the plaintiffs' "malicious and willful destruction and alteration of said road and defendant's property." She denied that the plaintiffs had been impeded in any legitimate use of the road. Ms. Couser further alleged that the burial of one marker had been necessary because of problems with the marker; she stated that the marker had never been moved and accurately marked the property line. Ms. Couser's answer set out several defenses. Ms. Couser also filed a motion for a temporary injunction against the plaintiffs, which the court granted. The temporary injunction enjoined the plaintiffs from "permitting or causing further erosion of fill dirt and gravel from the construction site of their property onto the property of Defendant Edith G. Couser."

In December 2004, the plaintiffs filed a motion to compel based upon the defendant's failure to answer interrogatories and requests for production of documents alleged to have been served upon her in September 2004. After a hearing on January 3, 2005, the trial court entered a consent order[2]

---

[1]Terrell Couser, Ms. Couser's husband, died prior to the initiation of this lawsuit.

[2]This order is not included in the record on appeal, which does not contain any filings for the time period between December 20, 2004 and June 1, 2005. Because other parts of the record and the briefs of the parties make reference to the omitted filings, and because the omitted filings are included as appendices to the appellee's brief, this Court will consider them as necessary.

requiring the defendant to serve her discovery responses upon the plaintiffs by January 14, 2005.[3] The plaintiffs filed a motion for sanctions dated January 24, 2005, and an amended motion for sanctions dated March 9, 2005, based upon the defendant's failure to comply with the court's order. The defendant filed a response alleging that long-term health problems had prevented her from meeting with counsel. On April 7, 2005, the court entered an order[4] imposing sanctions pursuant to Rule 37 of the Tennessee Rules of Civil Procedure due to the defendant's failure to comply with the court's January 11, 2005 order. In its order, the court stated:

> 2. The Defendants, Terrell W. Couser and Edith G. Couser, are hereby disallowed from supporting or opposing any of their claims or defenses in this matter related to any matter upon which discovery was compelled under the Court's January 11, 2005, Order.

> 3. The Defendants, Terrell W. Couser and Edith G. Couser, are hereby disallowed from introducing into evidence at any of the proceedings in this matter anything the discovery of which was compelled under the Court's January 11, 2005, Order.

The Court reserved the issue of monetary sanctions for a future hearing.

In June 2005, the plaintiffs moved for partial summary judgment, citing the April 7, 2005 order "which prohibits the Cousers from introducing any evidence that could dispute any of the material facts alleged and proven by the Plaintiffs." The plaintiffs also filed an affidavit by Eric Magness and a statement of undisputed facts. Ms. Couser filed a response in opposition to the plaintiffs' motion for partial summary judgment and a response to the plaintiffs' statement of undisputed facts. The defendant also filed a motion requesting leave to present evidence on the basis that Ms. Couser had now complied with the court's order regarding discovery. After a hearing, the court entered an order on July 7, 2005, denying the defendant's motion for leave to present evidence (and a motion to amend order) and granting the plaintiffs' motion for partial summary judgment. The court decreed the plaintiffs to be the owners of the property in question and found Ms. Couser to have been guilty of trespass on the property. The issue of damages and the terms of a permanent injunction to be issued against Ms. Couser were to be determined at the final hearing. The defendant's counterclaim was dismissed pursuant to Tenn. R. Civ. P. 41.02. In January 2006, the defendant filed a motion in limine for leave to present evidence and to amend the order.

The final hearing was held on February 2, 2006. The transcript indicates that, prior to the hearing, the parties stipulated to the boundaries of the disputed roadway and property. The plaintiffs put on proof regarding damages sustained as a result of the defendant's trespass as well as the nature and extent of the trespass for purposes of injunctive relief. The plaintiff's first witness was a

---

[3]The order actually gives a deadline date of "January 14, 2004." However, in light of the fact that the matter was heard on January 3, 2005 and the order entered on January 11, 2005, this Court will assume the 2004 date to be a typographical error.

[4]This order is not included in the record on appeal. For the same reasons set forth in footnote 1 above, we will nevertheless consider this order.

landscaper who had examined the property and given the plaintiffs an estimate of his charges for removing a stone wall and other materials blocking part of the driveway, correcting the drainage problems, and generally returning the area to its previous condition. The landscaper gave the following estimates: $1,787.00 to repair damaged plants; $2,245.00 to remove the stone pile and repair the road bed; and $1,185.00 to remove the stone and dirt along the side of the road.

The second witness was a construction contractor who had put up a metal building on the plaintiffs' property. He testified about encounters with Ms. Couser during his construction work on the plaintiffs' property. The contractor described an incident when Ms. Couser approached him, told him to get off of the property, and called the police. Thereafter, Ms. Couser would frequently drive by the construction site; at times, she would repeatedly drive by in one direction and then come back again a few minutes later. Each time Ms. Couser drove by, the construction workers would shut down their equipment to keep dust from blowing in her direction. The contractor testified that Ms. Couser's actions caused the project to take more time and cost more money. He stated that, particularly during the first few weeks, about half of their time was spent dealing with Ms. Couser's interruptions. He therefore estimated that about $4,000.00 out of his total bill to Mr. Magness was attributable solely to Ms. Couser's actions.

Eric Magness was the last witness. His list of damages, which was admitted into evidence, detailed total damages in the amount of $41,056.60; this total consisted of $21,137.00 in legal fees, $10,800.00 in out-of-pocket losses (including losses from missed work due to court appearances, arrest for trespass charges filed by Ms. Couser, and police calls; and lost worker hours due to police interruptions), and general damages (including the cost of replacement plants, surveys, and road maintenance). Mr. Magness testified that he had seen Ms. Couser's son, Tommy Couser, spraying herbicide on his property and had asked him to stop. He stated that Mr. Couser would shoot off weapons along the fence line between their properties. He further stated, "I don't like him shooting around my children, following minors down to my house, waits for them to get out of the car and then empties a clip to where they are in such fear to go out on the road that they have to exit through my front yard." Mr. Magness testified that Mr. Couser fired weapons in proximity to his property on a daily basis, both day and night. He also described and played a recording of a sound he likened to an air raid horn that Mr. Magness and his family heard at various times of the day and night. Mr. Magness testified that Mr. Couser had mounted cameras at the fence line allowing him to see Mr. Magness's son's bedroom and to see everyone coming in and out of the house.

Mr. Magness kept a log of incidents relating to the Cousers. Included in the log was an incident when someone placed dead animals near the property line, causing an obnoxious smell. Mr. Magness had seen Mr. Couser cut their phone lines with his tractor. In addition, the day after the court granted partial summary judgment, Ms. Couser filed criminal charges against Mr. Magness and had him arrested; the case was later dismissed. Mr. Magness also testified about and presented a metal spike he found in the road.

During cross-examination, Mr. Magness testified as follows:

Q. Mr. Magness, if I can just cut to the chase, you are concerned about Tommy Couser mostly; aren't you?

A. No, I'm concerning [sic] about both of them. You want to know why?

Q. I certainly would.

A. Because she goes down to the house and screams at him, and then he gets irrational, and then he's running my property line shooting and doing anything that he can, and she leaves and I have to deal with him then. Yeah, I'm concerned about her; I'm real concerned about her.

THE COURT: Are you saying that he is her agent?

THE WITNESS: Yes, most definitely.

BY MR. BOWHAN:

Q. Did you ever hear her tell him to do any of this stuff?

A. Yes, yes.

Q. What did she say?

A. I heard her yell–it's a little hard to hear, but I hear him turn around and go, "Momma, I can't get them to do nothing."

Q. So how does that–how does that have to do with any trespass?

A. That means provoking, because that's how they deal with things.

Q. All right.

A. He has come up to people on my property and confronted them so they would hit him.

Q. What does that have to do with Ms. Couser?

A. He's her agent. And then she comes in behind and threatens.

Q. So you believe that he did all this on her instigation; that she specifically ordered him to do that?

A. Exactly.

Q. But you have nothing to base it on?

A. Except the words out of his mouth. And me dealing with her with the road over the years, me trying to work with her on a communication level to work it out, and she tells me basically to go to hell. You know, what do you say to that.

Based upon the sanctions previously imposed under Tenn. R. Civ. P. 37, the trial court permitted counsel for the defendant to cross-examine the plaintiffs' witnesses, but not to call any rebuttal witnesses. At the end of the plaintiffs' proof, defendant's counsel asked permission to present some rebuttal. He indicated that he wanted to question Ms. Couser about the water backing up on the road and whether she thought it was necessary for the ditch to be made. The court denied his request: "Well, I've reread the order and I've read the interrogatories and request for production, and I think that that request specifically would be precluded by the Court's order, because that kind of information, even the identity of the witness, was asked for and not complied with in the Court's order that she violated, so respectfully denied."

After the conclusion of the proof, the chancellor called in Tommy Couser, who was waiting outside the courtroom, so that he could hear the court's ruling. On the issue of damages, the court granted all of the general damages from Mr. Magness's list of $9,119.60; $8,000.00 for legal fees, specifically excluding any fees for representation in the criminal case; and $5,000.00 for out-of-pocket losses. The court also issued an injunction and made Tommy Couser a party defendant to the case for purposes of the permanent injunction; he specifically found that Mr. Couser was an agent of Ms. Couser. He stated that what had happened to the plaintiffs constituted extreme and outrageous conduct. The injunction applied "to the Defendants Edith G. Couser, Thomas Couser, and anyone who enters with their knowledge upon the real property they own and/or reside upon located at 7265 Talley Hollow Road, Fairview, Tennessee." The injunction enjoined and restrained these persons from the following acts:

a.      Threatening, harassing, stalking, or in any way interfering with the plaintiffs, Eric Magness and Kathleen S. Magness, at any time at any place, or at any time threatening, harassing, stalking, or in any way interfering with anyone lawfully present on the Magness property or using the roadway easement . . . .

b.      Possessing or allowing the possession of any firearms or deadly weapons by themselves or anyone upon the Couser property, the Magness property, or the easement described above.

c.      Interfering in any way with the plaintiffs' use of the roadway including but not limited to not blocking the roadway, parking on the roadway or repetitively using the roadway for any purpose other than ingress or egress. Within the roadway the enjoined persons shall only travel upon the portion of the roadway intended and used for vehicular traffic, and not on areas outside the portion of the roadway intended and used for vehicular traffic.

d.      Entering upon the Magness property or allowing any trespass upon said property.

-6-

e.      Creating or allowing any amplified or artificial noise which would be audible upon Magness property and would interfere with plaintiffs' quiet enjoyment of their property.

f.      Conducting any maintenance upon the roadway . . . . Said maintenance of the easement shall be the sole and exclusive duty of the Plaintiffs, limited only to the extent that Plaintiffs may not interfere with Defendants ingress and egress to their property.

g.      Interfering with Plaintiffs' maintenance of the easement, including the removal of stone wall(s) and other impediments currently located within the easement.

Costs were assessed against Ms. Couser.

In April 2006, upon motion of the plaintiffs, the court entered an order awarding an additional $1,694.75 in favor of the plaintiffs for discretionary costs.

The Cousers have raised a number of issues concerning the trial court's actions in this matter:

1.      Whether the trial court erred when it barred Ms. Couser from testifying during the trial, defending the case against her, or presenting her case.

2.      Whether the trial court erred when it granted summary judgment in favor of the Magnesses.

3.      Whether the order and injunction entered by the trial court on February 3, 2006 was improper in its entirety.

4.      Whether the joinder of Tommy Couser was improper and an abuse of the trial court's discretion.

5.      Whether the money judgment against the Cousers was erroneous.

6.      Whether the award of costs by the trial courts was improper.

We have concluded that the trial court acted within its discretion in granting partial summary judgment, but that errors were made in the awarding of injunctive relief, damages, and costs.

**ANALYSIS**

Rule 37 of the Tennessee Rules of Civil Procedure

The Cousers' first two issues turn on the application of Rule 37 of the Tennessee Rules of Civil Procedure. This case serves to highlight the breadth of a trial court's discretion to impose sanctions under that rule.

Tenn. R. Civ . P. 37.02 includes a broad but not exclusive list of sanctions available to a trial court when a party fails to obey an order compelling discovery. The possible sanctions include dismissal of the complaint, granting a default judgment, or refusing to allow testimony at trial. *See Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230 (Tenn. Ct. App. 1998); *Strickland v. Strickland*, 618 S.W.2d 496 (Tenn. Ct. App. 1981). Discovery sanctions serve "a three-fold purpose: (1) to secure a party's compliance with the discovery rules, (2) to deter other litigants from violating the discovery rules, and (3) to punish parties who violate discovery rules." *Mansfield v. Mansfield*, No. 01A019412CH0058, 1995 WL 643329 at *5 (Tenn. Ct. App. 1995). A trial court's actions under Rule 37.02 are not to be disturbed absent an abuse of discretion. *Potts v. Mayforth*, 59 S.W.3d 167 (Tenn. Ct. App. 2001), *cert. denied*, 536 U.S. 959 (2002); *Shahrdar*, 983 S.W.2d at 236. The Tennessee Supreme Court has stated that, "A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning and which causes an injustice to the complaining party." *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005).

In this case, the trial court sanctioned Ms. Couser for failing to comply with the order compelling discovery by essentially precluding her from putting on any evidence related to any matter upon which discovery had been compelled. As a practical matter, the trial court made it possible for the plaintiffs to make their case without any opposing evidence from the defense. The defendants object particularly to the trial court's refusal to allow Ms. Couser to testify as a rebuttal witness. At the final hearing, the chancellor specifically found that his previous order imposing sanctions precluded any testimony by Ms. Couser since the interrogatories had asked her to identify possible witnesses. Thus, contrary to the Cousers's contention, the court's sanction was directly related to Ms. Couser's failure to answer the interrogatories as ordered. Moreover, given the trial court's broad discretion under Tenn. R. Civ. P. 37, we cannot find that its actions were without logic or reason. [5]

As to the trial court's grant of partial summary judgment, this Court likewise cannot conclude that the trial court erred. In support of its motion, the plaintiffs filed an affidavit by Eric Magness and a statement of undisputed facts. The defendants argue that Eric Magness's affidavit does not, on its face, establish that his statements are based on personal knowledge and that he is competent to testify regarding the matters stated in the affidavit, as required under Tenn. R. Civ. P. 56.06. The affidavit does, however, state that Mr. Magness resides on the property, which would suggest that he would have personal knowledge of the relevant facts. Moreover, in light of the trial court's previous ruling under Tenn. R. Civ. P. 37 sanctioning the defendants for failing to comply with discovery, it is questionable whether and to what extent Ms. Couser could refute the plaintiffs'

---

[5]We find the case of *March v. Levine*, 115 S.W.3d 892 (Tenn. Ct. App. 2003), cited by the Cousers, to be inapplicable here. The court's decision in *March* (finding the sanction of default judgment to be too harsh) was based largely upon the determination that the trial court should have based its ruling upon Mr. March's actions since the addition of a wrongful death claim and upon the contributing problematic behavior of the Levines.

claims. In any event, Ms. Couser did not submit an opposing affidavit. *See* Tenn. R. Civ. P. 56.06. Given the breadth of the trial court's authority under Tenn. R. Civ. P. 37.02, we cannot conclude that the chancellor's actions were in error.

## Injunctive relief

The next two issues raised by the Cousers concern the propriety of the injunctive relief granted by the chancellor. Regarding the issuance of injunctive relief, a reviewing court must determine whether the trial court erred in exercising its discretion. *Bd. of Comm'rs of Roane County v. Parker*, 88 S.W.3d 916 (Tenn. Ct. App. 2002).

In his order granting partial summary judgment, the chancellor found the defendants to have been guilty of trespass against the plaintiffs' property "in the manner alleged in the complaint." The permanent injunction contains provisions that enjoin the Cousers from certain actions, including: threatening, stalking, or in any way interfering "at any time at any place" with the Magnesses or anyone on their property (paragraph (a)); possessing or allowing possession of firearms or deadly weapons on the Couser property, the Magness property, or the easement (paragraph (b)); interfering with the Magnesses' use of the roadway (paragraph (c)); trespassing on the Magness property (paragraph (d)); creating or allowing artificial or amplified noises that would interfere with the Magnesses' enjoyment of their property (paragraph (e)); conducting any maintenance upon the roadway (paragraph (f)); or interfering with the Magnesses' maintenance of the easement (paragraph (g)).

The Cousers argue that the injunction entered by the trial court goes beyond the trespass described in the pleadings. The complaint includes an allegation that "the Plaintiffs cannot fully use and enjoy their property due to the actions of the Cousers." We consider this language sufficient to justify the consideration of evidence beyond the specific actions described in the complaint. Moreover, to the extent that the injunction addresses matters beyond the scope of the pleadings, we have concluded that most of these matters were tried by the consent of the parties and, therefore, properly subject to the trial court's injunctive authority. Tenn. R. Civ. P. 15.02 provides that, "When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Implied consent is generally found "'when evidence is introduced without objection, or when the party opposing the motion to amend himself produced evidence bearing on the new issue.'" *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 891 (Tenn. 1980) (quoting 6 Wright & Miller, Federal Practice and Procedure §1493 at 462-63). Despite being restricted by the Rule 37 sanctions with respect to the introduction of evidence, Ms. Couser had the opportunity to object to evidence introduced by the Magnesses. Ms. Couser did not object to the introduction of testimony regarding other instances of trespass, the discharge of firearms, and noise problems.[6] We conclude, therefore, that these issues were tried by the consent of the parties.

---

[6]Ms. Couser did object to the playing of a recording of the siren noise alleged to have come from her property, but she did not object to the testimony regarding that noise.

Although we find no error in the additional issues addressed by the trial court in its injunction, we conclude that some of the provisions in the injunction are overly vague or broad in their terms. Tenn. R. Civ. P. 65.02 requires an injunction to be "specific in terms" and to "describe in reasonable detail . . . the act restrained or enjoined." In paragraph (a), the Cousers are generally enjoined from "interfering with the plaintiffs . . . <u>at any time at any place</u>, or at any time threatening, harassing, stalking, or in any way interfering with anyone lawfully present on the Magness property." (underline added). The injunction's reference to interference with the Magnesses "at any time at any place" is overly vague and not sufficiently related to the problems to be remedied. Paragraph (b) of the injunction is also overly broad in prohibiting any possession of firearms or weapons by the Cousers or anyone on their property, the Magness property, or the easement. We recognize that the entry of bullets upon one's property has been found in some cases to constitute a trespass. *See, e.g., Citizens for a Safe Grant v. Lone Oak Sportsmen's Club*, 624 N.W.2d 796 (Minn. App. 2001). Providing a remedy to the Magnesses did not, however, require a total ban on possession of guns by the Cousers, whose property encompasses about 40 acres. *See Richardson v. Stacey*, No. M2001-02167-COA-R3-CV, 2002 WL 1838154 at *7 (Tenn. Ct. App. August 13, 2002) (modifying an injunction concerning gun use after finding it to "exceed the bounds necessary to grant relief to the plaintiff"). When asked about what kind of injunctive relief would be required to remedy the problems he described, Eric Magness stated: "If he could be removed from the property line; I don't know how much distance-wise. If he wants to target practice, that's great, but not 20 feet from my building or 20 feet from my house or my front yard with kids out in front." Paragraph (b) of the injunction exceeds the bounds needed to afford the plaintiffs relief. The injunction appropriately addresses the use or possession of guns by the Cousers upon or over the Magness property, but should not apply generally to the Couser property or the easement.

The defendants have also raised an issue regarding the chancellor's ruling at the hearing that Thomas Couser be joined as a party defendant. Since Thomas Couser had not been served with process or given a chance to be heard prior to the chancellor's ruling, we conclude that the trial court erred in making him a party defendant. Under Tenn. R. Civ. P. 65.02, however, "Every restraining order or injunction shall be binding upon the parties to the action, their officers, agents and attorneys; and upon other persons in active concert or participation with them who receive actual notice of the restraining order or injunction by personal service or otherwise." The chancellor specifically found that Thomas was an agent of his mother, and we have determined that the evidence does not preponderate against this finding. Pursuant to Tenn. R. Civ. P. 65.02, therefore, Mr. Couser is subject to the injunction.

It should also be noted that the injunction purports to apply to Edith Couser, Thomas Couser, and "anyone who enters with their knowledge" upon their property. Other portions of the injunction address persons other than the Cousers. Tenn. R. Civ. P. 65.02 limits the applicability of an injunction to "the parties to the action, their officers, agents and attorneys" and "other persons in active concert or participation with them who receive actual notice of the restraining order or injunction by personal service or otherwise." Therefore, only persons who fit this description and have adequate notice would be bound by the injunction.

This Court directs, therefore, that the injunction be modified by the trial court to address the problems discussed in this opinion.

-10-

<u>Damages</u>

Whether the trial court has applied the proper measure of damages is a question of law and, therefore, subject to de novo review with no presumption of correctness. *See Sexton v. Sevier County*, 948 S.W.2d 747 (Tenn. Ct. App. 1997). The amount of damages awarded, if within the limits set by law, is a question of fact and, therefore, shall be altered only when the evidence preponderates against it. *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586 (Tenn. 1994); *Armstrong v. Hickman County Highway Dept.*, 743 S.W.2d 189 (Tenn. Ct. App. 1987).

A party may recover compensatory damages in a trespass action. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 641 (Tenn. 1996). As a general rule, the measure of damages is the cost of restoring the property to its condition prior to the injury or, alternatively, the diminution in market value. *See Conaster v. Ball*, No. M1999-00583-COA-R3-CV, 2001 WL 873457 at *9 (Tenn. Ct. App. August 3, 2001). Damages may also be awarded for other types of harm, including the value of the trespasser's use and mental suffering. *See Cole v. Clifton*, 833 S.W.2d 75 (Tenn. Ct. App. 1992); *Ulhorn v. Keltner*, 723 S.W.2d 131 (Tenn. Ct. App. 1986); *Conaster*, 2001 WL at *8.

In his ruling from the bench, the chancellor based his damages award on three components– (1) general damages, (2) legal fees, and (3) out-of-pocket losses–as set out on the plaintiffs' list of damages. While the final order includes only a total damages amount ($22,119.60), this amount represents the sum of the three categories of damages awarded at the hearing: $9,119.60 in general damages; $8,000.00 in legal fees; and $5,000.00 in out-of-pocket losses. We will address each of these categories separately.

Most of the items listed by the plaintiffs as general damages relate to the costs of returning their property to its condition prior to the defendants' trespass–for example, the cost of replacing trees, plants, and grass and the cost of repairs to the road. Also included in this list is a $315.00 easement survey charge dated January 11, 2006. As will be discussed below, this $315.00 charge was included in the discretionary costs awarded by the trial court. The plaintiffs should not have been compensated for these charges twice. We find, therefore, that the award for general damages should be reduced from $9,119.60 to $8,804.60.

With respect to the damages classified as out-of-pocket expenses, we find that the chancellor's award was erroneous. Most of the damages listed by the plaintiffs under this heading are for Mr. Magness's lost time (for which he gave a rate of $100 per hour) as a result of court visits for this case as well as a criminal case brought against him by Ms. Couser, arrests for trespass initiated by Ms. Couser, an investigation by the Tennessee Department of Agriculture initiated by Ms. Couser, interruptions due to the police being called to his home, and archives research. These items total $9,100.00. When the Magnesses introduced their list of damages into evidence at the hearing, Ms. Couser objected, stating that the damages had not been correlated to any trespass. The evidence preponderates against a finding that these charges were related to the trespasses for which this action was brought. In fact, most of the listed items obviously relate to other grievances that Mr. Magness has against the Cousers. Moreover, we do not find payment for Mr. Magness's lost time to be an appropriate item of damages.

Also included in the plaintiffs' list of out-of-pocket expenses is $1700.00 for lost worker hours due to police interruptions. These expenses apparently reflect the time of workers employed by Mr. Magness at the rate of $50.00 an hour whose work was interrupted by the Cousers' actions and resulting police calls. Mr. Magness's incident log, however, does not document this much lost worker time occasioned by police interruptions. Most of the lost worker time described on the incident log relates to road repairs done to alleviate the problems created by the Cousers' actions; these charges were included in the "general damages" amount. The log describes lost worker time related to police interruptions on August 3, 2004 for $300.00 and on August 9, 2004 for $50.00 when the Cousers disrupted activity on the worksite, as described at the hearing. We conclude that the chancellor's award of $5,000.00 in damages for out-of-pocket losses should be reduced to an amount reflecting losses caused by the trespasses involved in this case. On the record before us, the appropriate figure would be $350.00 for lost worker time due to police interruptions related to trespasses by the Cousers.

The attorney fees were awarded as sanctions for failure to comply with the court's orders regarding discovery. We have concluded that the record does not contain an adequate evidentiary basis to support the trial court's award of $8,000.00 The plaintiffs requested a total of $21,137.00 in legal fees for the entire matter, $1500.00 of which was for representation on criminal charges. The chancellor specified that he was not awarding any legal fees related to the criminal charges brought against Mr. Magness by Ms. Couser. The final order includes a specific reference to the order dated July 7, 2005 in which the defendants were sanctioned for failing to comply with an order compelling discovery and the court reserved the amount of monetary damages for the final hearing. At the hearing, the chancellor stated that, under his previous ruling, he had the discretion to award attorney fees as discovery sanctions. Tenn. R. Civ. P. 37.02(E) provides that the court may require a party failing to obey a discovery order to pay "the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." The chancellor further stated that, "Based upon my experience, all the cases I've seen, the amount of fees that have been requested don't seem unreasonable in a situation like this." The record does not, however, include any accounting of the amount of time spent by the plaintiffs' attorney as a result of the defendant's failure to comply with discovery requests or any indication of the hourly rate applied by the trial court. While the trial court has broad discretion to impose sanctions under Rule 37, "some evidentiary basis is needed to support the trial court's award [of attorney fees]." *Ryan v. Surprise*, No. W2001-02853-COA-R3-CV, 2003 WL 22071005 at *9 (Tenn. Ct. App. August 27, 2003).

Thus, we have determined that the "general damages" should be reduced to $8,804.60, that the "out-of-pocket" damages should be reduced to reflect only those expenses related to the trespasses at issue (which appear to be $350.00), and that the award of legal fees should be vacated and remanded for an award supported by an adequate evidentiary basis.

## Costs

The final issue raised by the defendants on appeal is the propriety of the discretionary costs in the amount of $1,694.75 awarded to the plaintiffs.

Rule 54.04(2) of the Tennessee Rules of Civil Procedure states in pertinent part: Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions and trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs.

The awarding of discretionary costs under Tenn. R. Civ. P. 54.04, like the awarding of other costs, is within the trial court's discretion and shall be reviewed under an abuse of discretion standard. *Sanders v. Gray*, 989 S.W.2d 343 (Tenn. Ct. App. 1998).

In his order awarding discretionary costs, the trial court specified that his award covered the following expenses:

| | |
|---|---|
| Franklin Court Reporters | $159.75 |
| Chapdelaine and Associates | $472.50[7] |
| Keith Vaughn Co. | $800.00 |
| RHP Landscaping | $262.50 |

As the defendants have addressed their arguments only to the latter three charges, we will assume that they have no quarrel with the court reporter fees, which are clearly contemplated under Tenn. R. Civ. P. 54.04.

With respect to the charges from Chapdelaine and Associates for surveying, the defendants assert that this survey was not necessary as Ms. Couser did not dispute the meets and bounds of the Magness property. As is often the case, there is no transcript of the hearing concerning the awarding of costs. This Court has previously held that a transcript is not necessarily required in order to raise the issue of discretionary costs on appeal. *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 37 (Tenn. Ct. App. 2002). On appeal, the burden is on the party challenging the trial court's decision regarding discretionary costs to show that the trial court abused its discretion. *Id.* at 36. In this case, the parties stipulated to the description of the roadway easement in the survey prior to the hearing on damages and injunctive relief. In his final order, the chancellor made specific findings concerning the applicable meets and bounds. It appears, therefore, that the survey was a necessary expense. As stated in the Advisory Commission Comment to 2004 Amendment, the language in Tenn. R. Civ. P. 54.04(2) including "stipulated reports" in the allowable discretionary costs was intended to cover costs related to an expert's furnishing of "reports stipulated by adversaries to be accurate and truthful, thereby avoiding the necessity of a deposition." This language supports the chancellor's inclusion of the survey expenses in the discretionary costs award. The defendants have failed to show that the chancellor abused his discretion.

---

[7]This figure includes the $315.00 charge for a survey as well as a court appearance fee.

Keith Vaughn is the contractor who testified at the hearing concerning the interruptions caused by Ms. Couser during his work on a metal building on the Magness property. The defendants correctly point out that Mr. Vaughn was never qualified as an expert and that he testified as a fact witness. Tenn. R. Civ. P. 54.04(2) does not include charges by fact witnesses as allowable as discretionary costs. *See Massachusetts Mutual*, 104 S.W.3d at 38. Mr. Vaughn's charges of $800.00 should, therefore, be subtracted from the discretionary cost award.

The landscaper who testified at the hearing concerning the work needed on the Magness property worked for RHP Landscaping. His charges of $262.50 were based upon 5.5 hours spent at the courthouse and 2 hours of travel time at the rate of $35.00 an hour. The landscaper was not presented as an expert witness at the hearing; he testified as a fact witness concerning the nature of the damage he saw on the Magness property and how much he would charge to repair it. Moreover, Tenn. R. Civ. P. 54.04(2) specifically excludes travel expenses, which are part of the landscaper's charges. We conclude that these charges were not properly awarded as discretionary costs.

Thus, the award of discretionary costs should be reduced to $632.25 to reflect only the amount of the court reporter and survey expenses.

We affirm the chancellor's grant of partial summary judgment. We reverse the chancellor's rulings with respect to injunctive relief, damages, and discretionary costs and remand for modification and for further proceedings as necessary in accordance with this opinion.

Costs of appeal are assessed equally against the Appellants and Appellees, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE